**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

PABLO LABOY,
Plaintiff,

v.

DICK CORPORATION OF PUERTO RICO, INC., ET AL.,
Defendant.

Civil No. 05-1782(HL)

**OPINION AND ORDER**

Plaintiff Pablo Laboy brings this action against his former employer Dick Corporation of Puerto Rico, Inc., alleging discrimination, harassment and unlawful discharge in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. Laboy has also invoked this Court's supplemental jurisdiction over claims arising under the laws of the Commonwealth of Puerto Rico. *See* 28 U.S.C. § 1367. Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 24). For the reasons set forth below, Defendant's Motion for Summary Judgment is granted in part and denied in part.

**STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir. 1993). A fact is material only if it

"might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine" the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See also Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

Once a party moves for summary judgment, it bears the initial burden. Specifically, "'a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. *See* Fed.R.Civ.P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir. 1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Furthermore, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**BACKGROUND**

The relevant facts, viewed in the light most favorable to the Plaintiff, are as follows: Dick Corporation is a United States construction company based in Pittsburgh, Pennsylvania. The company first came to Puerto Rico in 1996, working on the "Superaqueduct" Project. On April 11, 1996, Plaintiff Laboy began working for the company as an engineering coordinator. During the course of Laboy's employment with Dick, he worked on various projects, hired personnel, and had several responsibilities, including troubleshooting. In 2002, Dick Corporation began to experience financial problems within the company. As a result of the financial problems, Dick Corporation underwent a corporate restructure beginning in 2004, ultimately deciding to cease operations

in Puerto Rico. Consequently, Dick Corporation did not contact new projects in Puerto Rico.

In 2003, Laboy was transferred to the Paseo Las Palmas project as the termination superintendent. As part of his duties on the project, Laboy hired outside contractors to facilitate the construction. While at the Paseo Las Palmas Project, Laboy worked with Ken Crowe, the project manager. Laboy alleges that in December 2003, Crowe told him that Dick Corporation's Vice President, Frank D'Angelo wanted to fire Laboy since Laboy worked for the company for a long time without supervision and was receiving some "kick backs." In the beginning of 2004, Ken Crowe resigned from his position at Dick Corporation and D'Angelo transferred Laboy to the Plaza Universitaria Project.

In February 2004, Laboy and D'Angleo discussed certain construction deficiencies the Superaqueduct project. During this meeting, D'Angelo allegedly told Laboy he was anti-company, anti-American and a disloyal Puerto Rican. By May 2004, the Plaza Universitaria project was approximately 91% complete. On May 15, Laboy's employment with Dick Corporation was terminated. The termination letter stated the discharge was due to a lack of work

## DISCUSSION

### *A. Title VII National Origin Discrimination*

Title VII makes it unlawful for an employer to discriminate against an employee with respect to her terms and conditions of work because of the employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a).[1] To establish a claim under Title VII, the plaintiff must first present a prima facie case of discrimination. *Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 28 (1st Cir. 2005). In a reduction of force case,

---

[1]Defendant's Motion for Summary Judgment expands the scope of Title VII to include political ideologies or affiliations as a protected class. However, since political ideologies is not a protected class under Title VII, this Court will limit its analysis, focusing solely on Laboy's national origin discrimination claim. *See* 42 U.S.C. § 2000e, *et seq*.

the plaintiff must show (1) that he was within a protected class; (2) possessed the necessary job qualifications and performed the job satisfactorily; (3) he was fired; (4) but members outside the protected class were retained in the same position and the employer failed to treat national origin equally in implementing the reduction of force. *See Holt v. Gamewell Corp.*, 797 F.2d 36, 37-8 (1st Cir. 1986); *Cruz-Ramos v. Puerto Rico Sun Oil Co.,* 202 F.3d 381, 384 (1st Cir. 2000).

Once a plaintiff meets the threshold requirements articulated above, the well established burden-shifting framework comes into play. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). The burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for the challenged adverse action. *Falero Santiago v. Stryker Corp.,* 10 F.Supp.2d, 93, 95 (D.P.R. 2002). Once the reason in articulated, the presumption of discrimination drops, *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993), and the sole remaining issue is of discrimination vel non. *Reeves v. Sanderson Plumbimg Prod., Inc.*, 530 U.S. 133, 142 (2000). To prevail, the plaintiff is required to show that employer's explanation was mere pretext for discrimination. *Melendez-Arroyo v. Cutler Hammer de P.R. Co.*, 273 F.3d 30, 33 (1st Cir. 2001).

In the case at bar, Laboy is able to present a prima facie case for national origin discrimination. Plaintiff is a Puerto Rican male who satisfactorily performed the duties of his position. The record presents no evidence of negative work evaluations and to the contrary, shows that Laboy was often considered a troubleshooter for the company; however, he was nevertheless dismissed. Defendants argue that Laboy is unable to establish that Dick Corporation recruited someone outside the protected class after his termination to perform his duties.[2] However, in a reduction of work case, the fourth prima facie element is

---

[2]Defendants cite *Le Blanc v. Great Am. Ins. Co.*, 6 F.3d 836 (1st Cir. 1993) and its progeny to support their position. In *Le Blanc*, the court stated that "a discharged employee is not replaced when another employee is assigned to perform the plaintiff's duties, or when the work is redistributed among other existing employees already performing related work." *Id.* at 846. The Court, however, was not addressing the requirement of replacement in a prima facie case of Title VII wrongful termination. *Rodriguez-Torres*, 399 F.3d at 59, n.4. Instead, the First Circuit in *Le Blanc* addressed the plaintiff's argument attempting to establish pretext. The employer in *Le Blanc* stated its

that the employer did not treat national origin equally. *See Holt b. Gamewell Corp.***,** 797 F.2d at 38. In any event, the First Circuit has held that a plaintiff employee need not establish that his former employer hired a replacement or designated other employees as the plaintiff's replacement in a wrongful termination case. *Rodriguez-Torres*, 399 F.3d at 59. Instead, to satisfy the replacement element, a plaintiff must show that the employer had a continuing need for the work that a plaintiff was performing prior to termination. *Id.* Laboy has presented evidence that two North American employees with less seniority and similar qualifications remained with the company at the time of his termination. Accordingly, he has satisfied the final element of his prima facie case for national origin discrimination.

Having established the elements of a prima facie case, the burden shifts to Dick Corporation to articulate its legitimate, nondiscriminatory reasons for Laboy's termination. Dick Corporation has stated that due to economic problems, the company would not undertake new projects in Puerto Rico and eventually close operations on the island. According to Dick Corporation, as the Plaza Universitaria project neared completion, Laboy was laid off due to lack of work. The company has further presented evidence that from 2004 to 2005, seven employees resigned, seven were laid-off, and three employees were sent back to the continental United States. Currently, Dick Corporation employs eight individuals and is working on one project, which is approximately 61% complete. Given Dick Corporation's articulated nondiscriminatory reasons for its employment actions, the burden shifts back to Laboy to demonstrate that Dick Corporation's alleged reasons are a mere pretext.

"Courts should exercise particular caution before granting summary judgment for

---

legitimate reason for terminating the employee was a reduction in force. The plaintiff in *Le Blanc* argued that the reduction in force was a pretext, since his position was not eliminated and he was replaced internally. The Court, using the language quoted above, rejected the employees argument since having current employees fill a discharged employee's duties is consistent with a reduction in force. *See id.* "Thus, in a reduction-in-force case, an employee, trying to prove pretext on the ground that he was replaced, must prove that the replacement came from outside the company." *Rodriguez-Torres,* 399 F.3d at 59 n.4. This ruling, however, does not state the required proof for the fourth prong of the prima facie case a Title VII wrongful termination case. *Id.*

employers on issues such a pretext, motive and intent." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 43, 55 (1st Cir. 2000). Summary judgment, however, is not automatically precluded in cases where motive and intent are at issue. *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998). "If the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation, summary judgment may be appropriate even where intent is at issue." *Id.* Here, Laboy has produced sufficient evidence to create a genuine issue of material fact. At the time of his discharge, two North Americans with less seniority remained at the company performing similar duties. Furthermore, Dick Corporation provided employees from the continental United States additional benefits not offered to their Puerto Rican counterparts, including a car, gasoline stipend, housing and school payments for their children. In addition, Dick Corporation received at least three complaints of race and national origin discrimination. Lastly, in February 2004, approximately three months prior to Laboy's discharge, Dick Corporation's Vice President Frank D'Angelo allegedly accused Laboy of being anti-American, anti-company and a disloyal Puerto Rican. While stray remarks standing alone are normally insufficient to establish pretext or the requisite discriminatory animus, *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002), Laboy has presented other evidence, when taken together with D'Angelo's remarks is sufficient to create a genuine issue of material fact as to whether Dick Corporation's articulated nondiscriminatory reason was merely pretext. Accordingly, Defendant's Motion for Summary Judgment regarding Plaintiff's Title VII national origin discrimination claim is denied.

***B. Title VII Harassment claim.***

Title VII also makes it unlawful for employers to create a discriminatory hostile or abusive environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). In order to prevail on a claim for hostile environment, the employee must show that discriminatory intimidation so permeates the workplace that it is sufficiently severe and pervasive to alter the condition of the plaintiff's employment and create an abusive environment. *Id.* To determine whether an workplace environment is "hostile" or "abusive" requires examination

of all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. "The hostile work environment standard must be kept sufficiently demanding to ensure that Title VII does not become a general civility code." *O'Rourke v. City of Providence,* 235 F.3d 713, 729 (1st Cir. 2001). As such, isolated incidences and offhand comments are not sufficient to create a hostile work environment. *Faragher v. Boca Raton,* 524 U.S. 775, 786 (1998).

While Laboy has presented some evidence of derogatory remarks based on national origin, he has not presented sufficient evidence to sustain a hostile environment claim under Title VII. The remarks made by D'Angelo and other employees[3] regarding the Puerto Rican culture, while offensive, were episodic, but not so frequent as to become pervasive. Furthermore, the remarks were never physically threatening, and more significantly, the conduct was never an impediment to Laboy's performance, which he maintains remained more than satisfactory. Consequently, Defendant's Motion for Summary Judgment regarding Plaintiff's Title VII harassment claim is granted.

***C. Law 80: Unjust Dismissal***

Laboy's first Commonwealth law claim is one of unjust dismissal in violation of Puerto Rico's Law 80. P.R. Laws Ann. tit. 29 § 185. Specifically, Law 80 provides indemnity to employees who are terminated from their employment "without just cause." *Id.* A dismissal without cause is "[a] discharge made by mere whim or fancy of the employer or without cause related to the proper and normal operation of the establishment." *Id.* at § 185b. An employee's initial burden is to allege unjustified dismissal and prove actual dismissal. *Alvarez-Fonseca v. Pepsi Cola of P.R.*, 152 F.3d 17, 28 (1st Cir. 1998). If an employee fulfills this burden, the employer must establish by a preponderance of evidence that the discharge was made for good cause. *Id.* at 28.

---

[3]Dick Corporation employee Mark Coreman made the comment "Puerto Ricans are useless" in January 2004.

Law 80 provides an illustrative list of reasons that constitute just cause for dismissal, including "(d) [f]ull, temporary or partial closing of the operations of the establishment ....[and] (f) [r]eductions in the employment made necessary by a reduction in the anticipated or prevailing volume of production, sales, or profits at the time of the discharge." § 185b. The statute further provides that in instances of discharges or lay-offs pursuant to subsections (d) and (f), the employer must follow seniority within the occupational classification subject to the lay-off. § 185c. However, an employer may consider the efficiency and capacity of the workers compared if there is a clear and conclusive difference. *Id.*

Laboy can establish his initial burden under the Law 80 framework. He has alleged unjust dismissal and the undisputed facts establish that he was actually terminated from his position at Dick Corporation on May 15, 2004. The burden then shifts to Dick Corporation to establish by a preponderance of evidence that Laboy's discharge was made for good cause. At first glance, it appears that Dick Corporation has effectively met this burden by presenting evidence of economic problems within the company, resulting in the corporate restructure. This restructure included an eventual close of operations in Puerto Rico upon completion of remaining projects. Lay-offs which take place due to closing of operations or reductions in employment made necessary in the anticipated volume of production constitute just cause under Law 80. § 185b (d)(f). However, Laboy has presented evidence that at the time of his termination, two individuals with similar qualifications but less seniority remained at the company. Furthermore, Dick Corporation has not presented any evidence illustrating a clear and conclusive difference in the efficiency and capacity of those two individuals in comparison with Laboy. Accordingly, Defendants' Motion for Summary Judgment with respect to Laboy's Law 80 claim is denied.

***D. Law 100: National Origin Discrimination***

Laboy's second Commonwealth claim against Dick Corporation is one of national origin discrimination in violation of Puerto Rico's Law 100. P.R. Laws Ann. tit. 29 § 146. Specifically, Law 100 imposes liability on:

> [a]ny employer who discharges, lays off or discriminates against an employee regarding his/her salary, wage, pay, or remuneration, terms, rank, conditions or privileges of his/her job, or who fails to or refuses to hire or rehire a person, or who limits or classifies his/her employees in a way which tends to deprive a person of employment opportunities, or that affects his/her status as employee because of his/her age, as defined below, race, color, sex, social or national origin, social condition, political affiliation or political or religious ideology of the employee of applicant for employment...

P.R. Laws Ann. tit. 29 § 146. In order to establish a prima facie case of discrimination under Law 100, an employee must establish (1) that he suffered an adverse employment action, (2) that the adverse action taken against him lacked good cause, and (3) some basic fact substantiating the type of discrimination alleged. *See Hernandez v. Trans Oceanic Ins. Co.*, 151 D.P.R. 754, 774-775 (2000); *Morales v. Nationwide Insurance Co.*, 237 F.Supp.2d 147, 152 (D.P.R. 2002). To determine what constitutes just cause in a Law 100 claim, courts look to the definition of just cause in Law 80. *Baez Garcia v. Cooper Labs., Inc.*, 1987 WL 448243 (P.R. Dec. 18, 1973). If the employee establishes a prima facie case, the statutory presumption of employer liability is triggered, and the employer must prove, by a preponderance of the evidence, that the adverse action "was not motivated by discriminatory animus." " *Morales*, 237 F.Supp.2d at 152. An employer can rebut the presumption of liability by demonstrating "the existence of discrimination was less probable that its existence." *Id.* at 153. If the employer rebuts the presumption by a preponderance of evidence, the burden shifts back to the employee to prove the existence of discrimination. *Id.*

In this case, Laboy can establish his initial burden under Law 100. As discussed above, Laboy has also provided evidence that his dismissal was without cause since two individuals with less seniority remained employed at Dick Corporation at the time of his dismissal, thereby fulfilling the first two elements of his prima facie case. Lastly, Laboy has presented basic facts substantiating national origin discrimination: (1) he is a Puerto Rican individual and (2) Dick Corporation did not treat national origin neutrally since two North Americans with less seniority remained in his position. Consequently, Laboy has triggered

the statutory presumption of employer liability[4] and Dick Corporation must prove by a preponderance of evidence that Laboy's dismissal was not motivated by discriminatory animus.

Even assuming that Dick Corporation can rebut the presumption of liability by demonstrating that Laboy's dismissal was motivated by the economic troubles facing the company, as discussed above with respect to the Title VII claim, genuine issues of material fact exist as to whether Dick Corporations actions were motivated by discriminatory animus. Accordingly, Defendant's Motion for Summary Judgment is denied.

***E. Article 1802 of Puerto Rico Civil Code: Slander and Defamation***

Lastly, Laboy alleges slander and defamation against Dick Corporation's Vice President Frank D'Angelo for allegedly perpetuating the rumor that Laboy "was on the take." Puerto Rico defines slander as "a false and unprivileged publication other than libel which... tends directly to injure [an individual] in respect to his office, profession, trade or business or which by natural consequences causes actual damages." P.R. Laws Ann. tit. 32 § 3143. Laboy brings this claim under the Provisions of Puerto Rico's General Tort Statute, Article 1802 of the Puerto Rico Civil Code. P.R. Laws Ann. tit 31 § 5141. "The basic elements of a Section1802 action for defamation do not differ from those of a general negligence action under Section 1802 of the Civil Code. Plaintiff must show that defendant's wrongful or negligent actions actually and proximately caused plaintiff certain and quantifiable damages." *Gierbolini Rosa v. Banco Popular de Puerto Rico*, 930 F.Supp 712, 717 (D.P.R. 1996). In other words, Laboy must show that the statement or information published was

[4]For claims arising both under Law 100 and Law 80, a simple allegation of discrimination is insufficient to trigger the statutory presumption of employer liability in Law 100. *See Valera Teron v. Banco Santander de Puerto Rico,* 257 F.Supp.2d 454, 465-6 (D.P.R. 2003). In addition to alleging termination without just cause, a plaintiff must further show some basic facts needed to substantiate the type of discrimination alleged. *Id.* Consequently, "a plaintiff must not only allege unjustified dismissal, but must also present proof to this effect, in order to trigger the Law 100 presumption of discrimination and shift the burden of proof to the defendant." *Id.*; *see also Diaz Fontanez v. Wyndham Hotel Corp.*, 155 D.P.R. 364 (2001).

defamatory and false, causing him actual harm. *Porto v. Bentley Puerto Rico, Inc.*, 132 D.P.R. 331 (1992); *Maldonado and Negron v. Marrero and Blanco*, 121 D.P.R. 705 (1998). Lastly, since he is a private individual as opposed to a public figure, Laboy must prove the publication was negligently made. *Id.*

The Puerto Rico Libel and Slander Act of 1902, provides a tradition defense of privilege. P.R. Laws Ann. tit. 32 § § 3144-3145. This traditional defense of privilege is available to libel and slander actions brought under Article 1802 of the Civil Code. *Gierbolini Rosa,* 930 F.Supp. at 717. The defense of privilege has been applied in the employer/employee context to promote the free flow of communication and to defeat a cause of action for defamation. *Porto*, 132 D.P.R. 331. In *Porto,* the Supreme Court of Puerto Rico provided an illustrative list of instances where the qualified privilege extended to workplace communications, including communications between employees and managers regarding the reason for discharging an employee and the communications between supervisors and personnel staff. *Id.*

Even assuming D'Angelo published information that Laboy was receiving illegal commission, D'Angelo's statements to other individuals in Dick Corporation clearly fall within the rubric of workplace intra-communications protected by the qualified privilege. Laboy has presented one instance of alleged slander, which was a single comment made by Ken Crowe stating that D'Angelo purportedly said Laboy was "on the take." However, Dick Corporation has presented uncontested evidence that D'Angelo's statement to Crowe fell within the context of an investigation. The company received information from Miguel Castano, a former contractor of the Paseo Las Palmas project, that Laboy allegedly requested money from him. As a result of the accusation, the company conducted an internal investigation to establish the veracity of the allegation. While D'Angelo could not specifically recall who first told him of the rumor, he stated that per company policy he would have spoken to either Mark Carter or Ken Crowe, Laboy's supervisors on the project. Laboy has not presented any other information that D'Angelo spoke with any individual outside the company regarding the kickback rumor. Consequently, all comments made to

Carter or Crowe by D'Angelo fall within the traditional defense of qualified privilege. Accordingly, Defendant's Motion for Summary Judgment with respect to Plaintiff's Commonwealth slander and defamation claims is granted.

## CONCLUSION

**WHEREFORE,** the Defendant's Motion for Summary Judgment is granted in part and denied in part. Defendant's Motion for Summary Judgment with respect to Laboy's Title VII harassment claim and Commonwealth slander claims is granted. Defendant's Motion for Summary Judgment for Plaintiff's Title VII national origin discrimination claim, Commonwealth Law 80, and Commonwealth Law 100 claim is denied.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 30, 2006.

S/ HECTOR M. LAFFITTE
Senior United States District Judge